Lindsay G. Leavitt – 029110
Lleavitt@jsslaw.com
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
One East Washington Street
Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Peter Strojnik,<br><br>  Plaintiff<br><br>vs.<br><br>New Crescent Investments, LLC, d/b/a Sheraton Crescent Phoenix,<br><br>  Defendant. | No. CV-20-00343-PHX-DWL<br><br>**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant to Defendant New Crescent Investments, LLC dba Sheraton Crescent Phoenix ("New Crescent") hereby responds in opposition to Mr. Strojnik Motion for Partial Summary Judgment ("MPSJ").

## I.   INTRODUCTION

Plaintiff, a former attorney who, in 2018, was disbarred from practicing law in Arizona for filing hundreds of frivolous ADA claims—has filed in this case another ADA claim that does not meet Article III standing requirements. He does not demonstrate how he, a person who does not use a wheelchair and who an orthopedist recently concluded was not disabled in any discernable way, suffered an injury-in-fact that violated his civil rights. As more fully discussed below, Plaintiff seems to assume that simply identifying barriers to accessibility at a public accommodation automatically allows him to prevail on an ADA claim. This is not how Article III standing, or ADA accessibility litigation, works. As more fully discussed below, Plaintiff has failed to allege, let alone meet, the various legal standards required to prevail on an ADA claim. His claim under the Arizona

Consumer Fraud Act also fails—this time because he fails to allege that he suffered any monetary damages as a result of visiting Defendant's property.

Accordingly, Defendant requests the Court deny Plaintiff's MPSJ.

## II. FACTUAL BACKGROUND

### A. Mr. Strojnik's ADA litigation history.

Mr. Strojnik is a former lawyer who, in 2018, was suspended from practicing law in Arizona in the midst of filing hundreds of ADA lawsuits on behalf of plaintiffs who (were found by multiple Arizona federal judges) lacked Article III standing. (Defendant's Separate Statement of Facts ¶ 1). He consented to disbarment on May 8, 2019. (DSSOF ¶ 2). Shortly after his suspension, but before he consented to disbarment, Mr. Strojnik began filing ADA cases as a *pro se* litigant. (DSSOF ¶ 3). He filed five (5) ADA cases in Hawaii federal court against 5 different hotels (and in one case, against the law firm representing a defendant) alleging that he was planning to return to each hotel. *Strojnik v. Kapalua Land Co., et al.,* 379 F. Supp. 3d 1078 (D. Haw. 2019) (Court dismissed Strojnik's claims against the defendant's law firm because he was unable to allege he suffered a distinct and palpable injury.) (DSSOF ¶3).

Mr. Strojnik admits that he has filed more than 200 ADA lawsuits as a *pro se* litigant since he was first suspended from practicing law in Arizona. (DSSOF ¶ 4). The majority of these cases were filed in California federal court. (DSSOF ¶ 5). In April and June 2020, he was declared a "vexatious litigant" by the Northern and Central District Courts of California. (DSSOF ¶ 9). He acknowledges that he has sent up to 50 "courtesy notices" to hotel properties in Arizona. (DSSOF ¶ 6). These "courtesy notices" attach a draft complaint and invite the hotel owner to negotiate a private settlement with him before he files the case in Arizona. (DSSOF ¶ 7). Mr. Strojnik files all of his ADA cases in Arizona state court in an attempt to avoid an Article III standing analysis and because the filing fees are less expensive. (DSSOF ¶ 8).

Of the hundreds of hotels that Mr. Strojnik has inspected for ADA violations, he

alleges that only one was ADA compliant, although he does not recall the brand of the hotel or even in what state that allegedly compliant hotel was located. He does recall, however, that he encountered the allegedly compliant hotel sometime between 2016 – 2018. (DSSOF ¶ 10).

### B. Plaintiff's alleged disabilities.

Plaintiff's Complaint alleges that he suffers from a number of physical disabilities. (See Complaint, generally). He concedes that his prostate cancer and renal cancer were not affected in any way by the alleged barriers to accessibility at Defendant's property. (DSSOF ¶ 12). He also conceded that none of his physical disabilities or conditions was "caused or exacerbated or made worse by" any alleged barriers to accessibility at Defendant's property. (DSSOF ¶ 12). Plaintiff alleges he was divorced in 2013 but still lives with his ex-wife Tanya Strojnik. (DSSOF ¶ 13). She accompanies Mr. Strojnik on approx. 80% of his hotel site inspections but he has never talked to her about his alleged disabilities. (DSSOF ¶ 13).

#### 1. "Severe right-sided neuroforaminal stenosis"

Plaintiff alleges that he suffers from "severe right-sided neuroforaminal stenosis." (Complaint, ¶ 11). He alleges the pain "happens all the time" and that he "experienced the pain" while at [Defendant's] property. (DSSOF ¶ 14). He believes that the pain was caused by encountering the alleged barriers to accessibility at Defendant's property. (DSSOF ¶ 15). Plaintiff's doctor has prescribed him medications to alleviate the physical pain, but the medication makes him nauseous and unable to drive so he does not like to take it. (DSSOF ¶ 16).

#### 2. "Degenerative right knee"

Mr. Strojnik self-diagnosed his degenerative right knee approximately three years ago. (DSSOF ¶ 17). He had a total right knee replacement in June 2019. (DSSOF ¶ 18). He testified that in January 2020 (around the time that he visited Defendant's property) he was experiencing "constant pain" that he would estimate as a "6 to 7" out of 10.

(DSSOF ¶ 19). As of October 2020, he still was experiencing "constant" knee pain "on the level of maybe 3 or 4" out of 10. (DSSOF ¶ 20). Plaintiff is unable to make a connection between whether certain physical activities cause the pain to flare up more than others. (DSSOF ¶ 21). Nevertheless, he believes that encountering the alleged barriers to accessibility at Defendant's property "caused [him] physical pain in his entire right leg." (DSSOF ¶ 21).

3. "Limitations on the use of both shoulders, elbows and wrists to reach and twist."

Plaintiff testified that he has arthritis that makes it is "very difficult" to reach above his shoulders and "extraordinarily difficult to twist [his] wrist." (DSSOF ¶ 22). He conceded, however, that the alleged ADA violations at Defendant's property did not cause, exacerbate, or cause an increase in pain to his shoulders or wrist. (DSSOF ¶ 23).

4. Plaintiff submitted to an Independent Medical Evaluation on March 9, 2020, that found he was not disabled.

On March 9, 2020, Plaintiff submitted to an Independent Medical Evaluation conducted by orthopedist Richard Greenfield, M.D. (DSSOF ¶ 24). Dr. Greenfield found that Plaintiff "appears to be functioning well post right total knee arthroplasty"; he "ambulates relatively well with a very slight limp"; has "no evidence of positive nerve root tension signs"; has "functional range of motion of his shoulders"; and an "adequate grip on both the right- and the left-hand side." (DSSOF ¶ 24). On February 11, 2020—one month after visiting Defendant's property—Mr. Plaintiff is seen on video checking into a hotel in Los Angeles, California, and can clearly be seen walking through the lobby without the use of any mobility device. (DSSOF ¶ 25).

C. **Mr. Strojnik walked around New Crescent's property with no intention to make a reservation and no specific date to return.**

Mr. Strojnik visited New Crescent's hotel on January 8, 2020, however, he did not plan to stay at the hotel that night. (DSSOF ¶ 26). He just wanted to stay there

"sometime in the future" but admitted he has no specific date on which he plans to return to Defendant's hotel—he only says that he would "like to get away, yeah, maybe on a weekend." (DSSOF ¶ 27). He has only stayed at Defendant's hotel once, and it was 25 years ago while chaperoning his son's soccer team. (DSSOF ¶ 28). Defendant's hotel is located in Phoenix off the I-17 & Dunlap Ave., approximately 3.5 miles from Plaintiff's personal residence in Central Phoenix. (DSSOF ¶ 29).

On January 8, 2020, Mr. Strojnik walked around New Crescent's hotel inspecting it for ADA compliance. (DSSOF ¶ 30). He did not use a wheelchair to navigate the property and he does not use a wheelchair at home. (DSSOF ¶ 31). He does not recall whether he used a cane or crutch to ambulate around New Crescent's property (DSSOF ¶ 31). He does not use a cane or crutch to navigate around his home and his home has not been modified in any way to make it accessible for persons with mobility impairments. (DSSOF ¶ 32). He does not own or use a wheelchair accessible van. (DSSOF ¶ 33).

### D.   The alleged ADA violations on Defendant's property.

Plaintiff's Motion for Partial Summary Judgment identifies nineteen (19) purported ADA violations at Defendant's property. (See, FAC, generally). Each alleged ADA violation can be lumped into one of three groups: (1) improper slope; (2) improper height; and (3) inaccessible pathway due to changes in elevation. (See Motion, generally) (DSSOF ¶ 34).

Plaintiff has been the attorney of record or the *pro se* litigant in nearly 2,500 ADA cases since 2015. (DSSOF ¶ 35). He has either personally inspected (or reviewed photographs of) each property before he files a lawsuit. (DSSOF ¶ 36). It is "relatively easy" for him to identify ADA violations when he enters a property. (DSSOF ¶ 37).

Regarding the alleged barriers to accessibility that fall within the "improper slope" category, Plaintiff testified that he first visually inspected the slopes from a distance, formed an opinion that they were non-compliant with the ADA, and then measured them to confirm. (DSSOF ¶ 38). Regarding the alleged barriers to accessibility

5

1 that fall within the "improper height" category, Plaintiff testified that he first visually
2 inspected the heights from a distance, formed an opinion that they were non-compliant
3 with the ADA, and then, in some instances, measured them to confirm. (DSSOF ¶ 39).
4 Regarding the alleged barriers to accessibility that fall within the "inaccessible pathway
5 due to change in elevation" category, Plaintiff testified that he easily and visually
6 identified the alleged violation from a distance, there was no need to measure or inspect
7 further. (DSSOF ¶ 40).

Mr. Strojnik alleges that he is six feet tall. (DSSOF ¶ 41).

### E. **Plaintiff's alleged damages.**

#### 1. Physical Pain

Plaintiff alleges that he suffered physical pain in his right leg and midsection while standing at the check-in counter, but he does not know whether he would have suffered the same pain if the check-in counter was ADA compliant. (DSSOF ¶ 42). He alleges that the non-compliant accessible parking sign did not cause him physical pain but that it hypothetically could cause him physical pain in the future if he had to park further away from the hotel entrance. (DSSOF ¶ 43). He alleges the improper parking lot slope caused him physical pain due to "parallelogram of force", but was unable to describe what that concept means or whether he would have not experienced pain getting out of his car in a properly sloped parking space. (DSSOF ¶ 44).

#### 2. Emotional Pain

Plaintiff alleges that encountering the barriers to accessibility made him feel angry and feel like a second-class citizen. (DSSOF ¶ 45). He alleges that he experiences anger and other emotional suffering each time he visits a hotel that he feels is non-compliant. (DSSOF ¶ 46). However, he has never seen a therapist or psychologist or any type of mental health professional to receive treatment for his feelings of anger and emotional suffering. (DSSOF ¶ 47).

#### 3. Monetary Damages

6

1   Plaintiff did not make a reservation at Defendant's hotel and did not pay
2  Defendant any money at any time, nor does he allege that he incurred money damages
3  in his Motion. (DSSOF ¶ 48). Plaintiff concedes that his damages are, in his words,
4  "nominal." (DSSOF ¶ 49).

5  **III.   PLAINTIFF DOES NOT HAVE ARTICLE III STANDING TO BRING AN ADA CLAIM AGAINST DEFENDANT.**
6

7   Prevailing on an ADA claim requires more than an individual with disabilities
8  simply identifying a condition at a public accommodation that falls short of the ADA's
9  standards. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547-48 (2016) ("Congress' role in
10 identifying and elevating intangible harms does not mean that a plaintiff automatically
11 satisfies the injury-in-fact requirement whenever a statute grants a person a statutory
12 right and purports to authorize that person to sue to vindicate that right.").

13  To have standing, Plaintiff, who an independent medical examiner found was not
14 mobility disabled in any discernable way, must meet Article III standing requirements.
15 That is, he must demonstrate that he suffered an (1) injury-in-fact, (2) fairly traceable to
16 the challenged conduct of the defendant, and (3) likely to be redressed by a favorable
17 court decision. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016).  In addition, because
18 the ADA only provides for injunctive relief, not monetary damages, a plaintiff pursuing
19 an ADA claim must satisfy the particular Article III standing requirements for injunctive
20 relief—there must be a "real and immediate threat that plaintiff will be wronged again."
21 *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).

22  This Response will demonstrate that Plaintiff fails to meet his burden to prove
23 the following three prongs of Article III standing: (1) he did not suffer an injury-in-fact,
24 (2) that is unlikely to be redressed by a favorable court decision, and (3) there is no real
25 and immediate threat that he will be wronged again.

26  **A.   Mr. Strojnik did not suffer an injury-in-fact.**
27  To establish injury in fact, a plaintiff must show that he or she suffered "an
28

7

invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S.Ct. at 1547. This includes a "requirement that a party seeking review must allege facts showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S.Ct. 1361 (1972). An ADA plaintiff has suffered an injury-in-fact when he encounters "a barrier that deprives him of full and equal enjoyment of the facility *due to his particular disability*." *Chapman v. Pier 1 Imports (U.S.) Inc.,* 631 F.3d 939, 944 (9th Cir. 2011) (en banc).

The Ninth Circuit's analysis in *O'Campo v. Bed Bath & Beyond of Cal., LLC,* 610 Fed.Appx. 706, 708 (9th Cir. 2015) is particularly instructive. In *O'Campo*, the plaintiff brought an ADA claim alleging that the various ADA violations interfered with his full and equal enjoyment of the facility. The district court dismissed his complaint because the plaintiff alleged that he navigated the property with the use of a cane, and not in a wheelchair. The district court found, and the Ninth Circuit upheld, that "the barriers [plaintiff] alleged would not interfere with the full and equal access of a mobility-impaired person who requires the use of a cane, rather than a wheelchair." *Id*. at 708. Citing its earlier ruling in *Chapman*, the Ninth Circuit reaffirmed that "an ADA plaintiff has suffered an injury-in-fact when he encounters "a barrier that deprives him of full and equal enjoyment of the facility *due to his particular disability*." *Id.*

Here, Plaintiff identifies purported ADA violations, but does not allege how these purported violations caused him to suffer an injury-in-fact, nor does he present any facts demonstrating how the alleged ADA violations affected his purported disability. Remember, Plaintiff did not navigate the property in a wheelchair, does not remember if he used any sort of ambulatory device, and acknowledged that he does not use a cane, crutch, or wheelchair to ambulate around his home. *See* DSSOF ¶¶ 30-33.

In fact, each of the 19 purported ADA violations Plaintiff identifies perhaps would be barriers to accessibility for an individual navigating the Defendant's property in a wheelchair. Plaintiff, however, did not use a wheelchair on January 8, 2020 and does

8

not use a wheelchair at home. Dr. Greenfield's IME and the YouTube both reveal that Plaintiff does not ever need to use a wheelchair. According to orthopedist Dr. Greenfield, Plaintiff "appears to be functioning well post right total knee arthroplasty"; he "ambulates relatively well with a very slight limp"; has "no evidence of positive nerve root tension signs"; has "functional range of motion of his shoulders"; and an "adequate grip on both the right- and the left-hand side." (DSSOF ¶ 24). Accordingly, Plaintiff has not (because he cannot) introduce evidence showing that the purported ADA violations he identifies in his MPSJ deprived him of "full and equal enjoyment of the facility *due to his particular disability*."

For this reason alone, the Court should find that Plaintiff lacks Article III standing as a matter of law.

**B.    The ADA claim is moot—the Court has already issued an injunction requiring Defendant to bring its property into compliance with the ADA by March 12, 2021.**

Plaintiff does not have Article III standing because this Court cannot issue a decision that will redress Plaintiff's harm—in other words, Plaintiff's ADA claim is moot.

On December 23, 2019, an ADA lawsuit was filed in this Court by Daimeon Mosley against Defendant. See *Mosley v. New Crescent Investments, LLC*, Case No. 2:19-cv-05888-DWL. In that lawsuit, Mr. Mosley, also a serial-ADA plaintiff, sued Defendant regarding a handful of garden-variety ADA violations he alleges he encountered at Defendant's property. Defendant sent Plaintiff a Rule 68 Offer of Judgment, allowing Plaintiff to receive a judgment against Defendant which provided that Defendant shall remove all barriers to accessibility that do not comply with the 2010 Standards of Accessibility Design by March 12, 2021. [Dkt. 11-1]. Plaintiff accepted Defendant's Rule 68 Offer and Judgment was entered by this Court on March 27, 2020. [Dkt. 12]. This means that this Court has already issued injunctive relief requiring Defendant to bring its entire property into compliance with the ADA. Accordingly, Plaintiff's ADA claim—

which seeks the very relief that the Court has already entered—is moot.

### C. Mr. Strojnik's "some-day" intentions to return to Defendant's property are not sufficient to receive injunctive relief.

Meeting the burden of proof to receive injunctive relief requires more than bald, conclusory statements to the effect of "I intent to return," "I'm deterred from returning" or "I'll probably come back at some point in the future." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564, 112 S.Ct. 2130, 2134 (1992) (A plaintiff's "some-day intentions without any description of concrete plans, or indeed even any specification of *when* the some-day will be do not support a finding of the 'actual or imminent' injury that our cases require."). Because the ADA only provides for injunctive relief (no monetary damages), a one-time encounter with a noncompliant facility does not an ADA claim make. As noted by the Ninth Circuit in ***Chapman v. Pier 1 Imports***, *supra* at 946:

> Though its purpose is "sweeping," *PGA Tour*, 532 U.S. at 675, 121 S.Ct. 1879, and its mandate "comprehensive," 42 U.S.C. § 12101(b)(1), the ADA's reach is not unlimited. Rather, as with other civil rights statutes, to invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation.

As the ***Chapman*** court also noted, to establish standing for the injunctive relief allowed by an ADA claim, a plaintiff must show a "real and immediate threat of repeated injury in the future." *Id.,* at 948. See also, ***City of Los Angeles v. Lyons***, 461 U.S. 95, 102, (1983) ("[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ..."). Under existing Ninth Circuit precedent, an ADA plaintiff may show the likelihood of "real and immediate threat of repeated injury in the future" in one of two ways: proving that he intends to return; or proving that the previous encounter with the ADA barrier is deterring him from returning to the property. See, ***Chapman***, *supra* at 949:

> Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to

10

> pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there.

Without dispute, Plaintiff bears the burden of proving either that he intends to return to the Defendant's hotel (and that without injunctive relief he will encounter the ADA barrier) or that he is deterred from visiting the Defendant's hotel because of the ADA barrier. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883-889, (1990):

> Since [standing requirements] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, <u>each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.</u> (Emphasis added).

These undisputed points of law frame the issues in Plaintiff's MPSJ:

- The ADA only provides for injunctive relief, not damages (*See* 42 U.S.C. § 12188(a)(2));
- To establish standing for injunctive relief requires a showing of likely repeated future injury (*Lyons* and *Chapman*, *supra*);
- The likelihood of repeated future injury can be shown by proving either an intent to return to the business or that the plaintiff is deterred from returning due to the architectural barrier (*Chapman*, *supra*);[1]
- Conclusory, undefined plans to return "some-day" are insufficient (*Lujan*, *supra*);
- Plaintiff bears the burden of proof (*Spokeo*, supra).

    (1)   <u>Plaintiff fails to offer any evidence to meet his burden to prove there is a "real and immediate threat of repeated injury."</u>

For purposes of a motion to dismiss, any allegations in Plaintiff's Complaint that he intends to return or is deterred from returning may be enough to survive scrutiny. See

---

[1] This is the current standard utilized by the Ninth Circuit. The Supreme Court has not yet spoken on whether the "deterred from returning" test satisfies standing.

11

*Civil Rights Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093 (9th Cir. 2017).[2] However, at summary judgment, Plaintiff must come forward with evidence to support those allegations, and in this instance the record reflects the Plaintiff presented absolutely no evidence/factual basis to establish standing. *Bodley v. Plaza Mgmt. Corp.*, 550 F. Supp. 2d 1085, 1087 (D. Ariz. 2008), aff'd, 331 Fed. Appx. 547 (9th Cir. 2009) (Granting summary judgment on basis ADA plaintiff failed to come forward with facts supporting Article III standing: "To meet this burden at the summary judgment stage, [Bodley] 'must set forth by affidavit or other evidence specific facts supporting each element.'").[3]

Before pointing out the complete absence of any factual support in Plaintiff's Motion to establish standing, it bears discussing that existing case law emphasizes the requirement of such facts when analyzing Article III standing in ADA cases. In every case (either District Court or Ninth Circuit) that analyzed standing on summary judgment (and a couple via bench trials) and which found the plaintiff satisfied the standing requirement, the court expressly relied on specific factual findings supporting the contention that plaintiff either intended to return or was deterred from returning—not just conclusory allegations. The Ninth Circuit's opinion in *D'Lil v. Best W. Encina*

---

[2] We anticipate Plaintiff relying heavily on the recent "*Creec*" opinion. However, the Ninth Circuit's holding came in the context of a Motion to Dismiss and the court specifically noted that it reached its decision on the well-established principal of law that it must accept the Plaintiffs' allegations as true: "The Named Plaintiffs have alleged in the First Amended Complaint that they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' noncompliance with the ADA. They further allege that they will visit the hotels when the non-compliance is cured. Thus, the ADA violations have prevented them from staying at the hotels. Without such averments, they would lack standing. However, 'construing the factual allegations in the complaint in favor of the plaintiffs,' as we must at this preliminary stage [citation omitted], we conclude that the Named Plaintiffs have sufficiently alleged injury in fact. 867 F.3d at 1099 (9th Cir. 2017).

[3] As noted, Plaintiff bears the burden of proof on standing. As the moving party on his motion, and bearing the burden of proof to establish standing, Plaintiff must produce affirmative evidence to support the elements of his claim. Defendant need only point out the lack of evidence in the record to support Plaintiff's claim. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986); *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–89 (1968); *In re Brazier Forest Prods. Inc.,* 921 F.2d 221, 223 (9th Cir. 1990).

*Lodge & Suites*, 538 F.3d 1031, 1038 (9th Cir. 2008) presents an informative example of the type of factual information an ADA plaintiff must present to establish standing:

> D'Lil submitted a declaration again reiterating that she "definitely plan[s] on staying at the [Best Western Encina] when it is made accessible." In that declaration, she explained that her preference for staying at the Best Western Encina during future trips to Santa Barbara was based on the hotel's proximity to downtown, its accessibility from the freeway, and its amenities, including lush gardening and fresh country linen quilts. At the close of her declaration, she summarized her preference for the Best Western Encina as follows: "It is a nice facility and fits with my needs with regards to taste, style, price and location.... If made accessible, I would definitely choose it again during my visits to Santa Barbara." At the evidentiary hearing, D'Lil, consistent with her declaration, testified that she had a desire to stay at the Best Western Encina because "it's the kind of hotel that I would like to stay at. It's simple, and you park close to your room, and it has a place to eat so I don't have to get in the car and drive somewhere else to go eat.....It meets the configuration of the kind of hotel I like to stay at. It's also less expensive than some of the other hotels." (Emphasis added).

In short, the plaintiff identified facts in support of her contention she would return to the business, including location; price; amenities and style.

Another example of a plaintiff providing specific facts supporting his claim he would return to the business is found in *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1135 (9th Cir. 2002). In that matter, Mr. Pickern presented specific facts that Holiday Foods was his "favorite grocery store chain", that when he needs to buy groceries he "looks first to Holiday Foods grocery stores", that the Holiday Foods store is near his grandmother's house and that "I try to go every Sunday to see my grandmother...she lives there...so I go up all the time." Similarly in *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1169, 1171 (9th Cir. 2010) the plaintiff testified as to a preference for a certain restaurant brand, that he had visited that brand several times and wanted to enjoy the "Chipotle experience"—all facts supporting his conclusion that he would return:

13

> Antoninetti is a paraplegic who uses a wheelchair for mobility. He visited the San Diego restaurant six times, four times as a customer and twice to gather evidence for this litigation. He visited the Encinitas restaurant twice, once as a customer and once in connection with discovery proceedings in this case.....Antoninetti has not visited either restaurant since this written policy was implemented. The parties have stipulated, however, that Antoninetti still wishes to enjoy the "Chipotle experience"—seeing all the ingredients on display and watching his burrito assembled and rolled—quickly and without inconveniencing employees or other customers.

Again, the plaintiff provided factual information supporting his stated desire to return—he likes the restaurant's food and style of operation. See also, *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034, 1040 (9th Cir. 2008) ("Doran alleged that he had visited the 7–Eleven store on ten to twenty prior occasions, that he is currently deterred from visiting the store because of its accessibility barriers, that the store is <u>conveniently located near his favorite fast food restaurant in Anaheim</u>, <u>and that he plans to visit Anaheim at least once a year on his annual trips to Disneyland</u>.");[4] *Crandall v. Starbucks Corp.,* 249 F. Supp. 3d 1087, 1106–07 (N.D. Cal. 2017)("the Starbucks is <u>less than 10 miles from Plaintiff's home</u> in his hometown, and Plaintiff testified that he wishes to return to the Starbucks once the access barriers have been removed. Further, he explained that he <u>would return to the Starbucks when he drops his children off at summer programs at his family's church just one mile away</u> and after eating at a nearby restaurant his family likes to frequent.")[5]

      On the other end of the spectrum, it is equally clear that an ADA plaintiff who fails to come forward with facts supporting standing—not mere conclusions—will have their claims dismissed on summary judgment. In *Feezor v. Sears, Roebuck & Co.,* 608 Fed. Appx. 476, 477 (9th Cir. 2015) the Ninth Circuit affirmed summary judgment against an ADA plaintiff on the question of standing, holding that conclusory allegations without

---

[4] Plaintiff provided facts as to the convenient location and a concrete plan to return – an annual vacation to that area.
[5] Once again, a plaintiff provided specific facts supporting the conclusion he is likely to return.

14

factual support fail, as a matter of law, to meet plaintiff's burden of proving standing). See also *Johnson v. Overlook at Blue Ravine,* 2012 WL 2993890, at *4 (E.D. Cal. 2012)("though Plaintiff testifies that the ADA violations deter him from returning to the Overlook and that he would like to return once the property altercations [sic] are complete, he presents no corroborating evidence."); *Vogel v. Salazar,* 2014 WL 5427531, at *2 (C.D. Cal. Oct. 24, 2014) ("Specifically, Plaintiff fails to assert or point to any colorable facts to prove that his assertion of deterrence is not merely hypothetical.")

Reviewing the PSOF and Declaration, in the context of applicable law, reveals not one single fact supporting standing. Indeed, while the PSOF is 16 pages and 65 paragraphs long, there is only one mention of deterrence. In PSOF ¶ 5 Plaintiff alleges that he "is deterred from visiting the Facility based on Plaintiff's knowledge that the Facility is not ADA compliant as such compliance relates to Plaintiff's disabilities." Indeed, contrary to the cases above in which the ADA plaintiff provides specific facts supporting standing, Plaintiff provides none.

Plaintiff's failure to come forward with facts to meet his burden of proof on standing dooms his ADA claim. Nor can Plaintiff salvage his claim by later coming forward with an after the fact affidavit trying to establish such facts. In his deposition testimony Plaintiff admitted that he has only stayed at Defendant's property once (more than 25 years ago), that he would stay there "sometime in the future" but that he did not have a specific date in mind, "maybe on a weekend." Any subsequent affidavit stating otherwise would violate the "sham affidavit" rule and not be admissible. *Yeager v. Bowlin,* 693 F.3d 1076, 1080 (9th Cir. 2012) (The "sham affidavit" rule provides that a "party cannot create an issue of fact by an affidavit contradicting ... prior deposition testimony.")

**(D)  Plaintiff failed to properly support his MPSJ.**

Even disregarding the standing issue, Plaintiff's MPSJ fails to comply with the express language of Rule 56. In particular, Rule 56(c)(4) states:

> Affidavits of Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Plaintiff's "Declaration" fails in every possible way. In Paragraph 22 of his "Declaration" Plaintiffs attempts to identify the alleged barriers at Defendant's hotel forming the basis of his lawsuit. Not surprisingly, Paragraph 22 is nothing more than a cut and paste of Paragraph 27 of his First Amended Complaint. Just a quick reading of Paragraph 22 of the "Declaration" reveals that Plaintiff simply makes conclusions and assumptions without any specificity, makes legal conclusions, and apparently relies on engineering calculations that Plaintiff never provides any basis to establish he is competent to testify on. There is not a single alleged ADA violation that presents admissible testimony if Plaintiff were to testify at trial. For example, "walking surface too steep." Rhetorically, what is the factual basis for Plaintiff's conclusion the "walking surface is too steep." What are the facts and assumptions Plaintiff relies on to reach that conclusions? These are all facts that should be included in a "Declaration" and certainly in a MPSJ. Other assertions lack any point of reference to understand just what Plaintiff complains of. For example, "improperly configured handrails." Which handrails and what makes them improperly configured? There is not a proper "fact" amongst any of Plaintiff's Statements of Fact—just a bunch of legal conclusions.

The most egregious violation of Rule 56(c)(4) is found at Paragraph 28 of the "Declaration" in which he states the "removal of accessibility barriers listed above is readily achievable." Plaintiff bears the initial burden of production to produce evidence that the removal of barriers to accessibility is readily achievable. *Vesecky v. Garick, Inc.*, 2008 WL 4446714, at *3 (D. Ariz. 2008). Quite tellingly, *Gonzales v. Riverrock Properties, LLC*, 2016 WL 3267116, at *4 (E.D. Cal. June 14, 2016), the court refused to even enter default judgment in favor of the plaintiff because plaintiff failed to come forward with "facts" demonstrating the necessary corrections to the barriers were readily achievable:

16

> [W]hile it may well be that the majority of the architectural barriers plaintiff encountered are readily removable, there is nothing in the record before the court on which it can conclude either as a matter of fact or law that they are.

If a plaintiff's failure to present facts on "readily achievable" precludes a default judgment, then certainly it also precludes entering summary judgment.

## IV. PLAINTIFF CANNOT MEET THE ELEMENTS OF CONSUMER FRAUD BECAUSE HE DID NOT SUFFER ANY MONETARY DAMAGES.

To establish a statutory consumer fraud claim in Arizona, a plaintiff must prove the defendant: (1) used deception, a deceptive act or practice, fraud, false pretense, made a false promise, made a misrepresentation, or concealed, suppressed, or omitted a material fact in connection with the sale or advertisement of merchandise; (2) defendant intended that others rely upon such a deception or fraud; and (3) plaintiff suffered damages as a result of reliance on defendant's deception or fraud. *See* RAJI Commercial Torts 21 Consumer Fraud (Elements of Claim).

A private individual's relief under the Consumer Protection Act is his actual damages suffered as a result of the unlawful act or practice. *Holeman v. Neils*, 803 F.Supp. 237, 242 (D. Ariz. 1992). These damages include the consideration paid in the contract and out-of-pocket expenses. *Id.* See also *Parks v. Macro-Dynamics, Inc.,* 121 Ariz. 517, 521, 591 P.2d 1005, 1009 (App. 1979) (finding the plaintiff had a claim for relief for statutory fraud where plaintiff alleged out-of-pocket expenses caused by the statutorily prohibited conduct); *Cheatham v. ADT Corporation*, 161 F.Supp.3d 815, 831 (D. Ariz. 2016) (plaintiff sufficiently alleged damages under consumer fraud claim when she claimed she would not have purchased defendant's product but for violation of Act).

Plaintiff argues that he visited Defendant's hotel because he relied on Defendant's website stating that the hotel was ADA compliant. Even assuming that is true (which it is not), Plaintiff only alleges that he suffered physical and emotional harm as a result of his reliance—he does not allege in his Motion that he suffered monetary

17

damages.   PSOF¶ 61 provides the following:

> Defendant's misrepresentations referenced above were made in connection with the sale or advertisement of lodging services which consequentially and proximately injured Plaintiff as a result. Plaintiff was injured, inter alia, by (1) experiencing segregation when visiting the barrier (2) experiencing pain and suffering in encountering barriers to accessibility (3) relegation to second class citizen status and (4) the pain, suffering and emotional damages inherent to discrimination and segregation.

Accordingly, without any allegation of monetary damages, Plaintiff's claim for relief under Arizona's Consumer Fraud Act must be denied as a matter of law.

## V.   CONCLUSION

Plaintiff's MPSJ should be denied because he lacks Article III standing to pursue his ADA claim and did not suffer any monetary damages resulting from his visiting Defendant's hotel on January 8, 2020.

RESPECTFULLY SUBMITTED this 21st day of October, 2020.

>                              JENNINGS, STROUSS & SALMON, P.L.C.
>
>                              By  *s/ Lindsay G. Leavitt*
>                                  Lindsay G. Leavitt
>                                  One East Washington Street, Suite 1900
>                                  Phoenix, Arizona  85004-2554
>                                  *Attorneys for Defendant*

18

**CERTIFICATE OF SERVICE**

☐ I hereby certify that on October 21, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

☒ I hereby certify that on October 21, 2020, I served the attached document by mail on the following, who are not registered participants of the CM/ECF System:

Peter Srojnik
7847 N. Central Avenue
Phoenix, AZ 85020
ps@strojnik.com

                                                    s/ Tana Davis-Digeno