Lindsay G. Leavitt – 029110
Lleavitt@jsslaw.com
JENNINGS, STROUSS & SALMON, P.L.C.
A Professional Limited Liability Company
One East Washington Street
Suite 1900
Phoenix, Arizona 85004-2554
Telephone: (602) 262-5911

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Peter Strojnik, | No. CV-20-343-PHX-DWL |
| Plaintiff | **MOTION TO DECLARE PLAINTIFF A VEXATIOUS LITIGANT** |
| vs. | |
| New Crescent Investments, LLC, d/b/a Sheraton Crescent Phoenix, | |
| Defendant. | |

From 2015 – 2018 Mr. Strojnik was the most prolific ADA plaintiff's attorney in the country. He filed more than 2000 copy-and-paste ADA lawsuits in Arizona state and federal courts alone and collected more than $1.2 million in settlements. The vast majority of the cases, however, were ultimately dismissed because his clients were found to lack standing. By 2018 the State Bar of Arizona had seen enough. They moved for an immediate suspension of Mr. Strojnik's law license, and in 2019 Mr. Strojnik consented to disbarment.

Since his suspension from practicing law Mr. Strojnik has filed more than 200 ADA accessibility lawsuits as a *pro se* litigant. One federal court noted that "[r]ather than being a befuddled pro se litigant…[Mr. Strojnik] is an experienced litigator who appears to have altered his business model to work around the loss of his [law] license." *Strojnik v. Singpoli Grp., LLC,* 2019 U.S. Dis. LEXIS 24494, at 3-4 (C.D. Cal. Feb. 14, 2019).

The following threat (written by Mr. Strojnik after Defendant rejected his settlement offer of $17,850.00) perfectly summarizes Mr. Strojnik's vexatious litigation tactics:

> There is nothing but downside to your client in pursuing this senseless
> defense: if it loses, it will have to remediate at a cost significantly greater

than any settlement requiring only "good faith review" and "best efforts" at remediation. If [Defendant] wins, I appeal. If I lose on appeal, I take a room at the Hotel and test it for compliance. If the Hotel is not 100% compliant, I sue again.

Just so that you and your client understand my position more clearly: I will not tolerate discrimination by anyone against anyone else. I am retired, disabled, and I am seriously choleric. I have the time, the energy and the desire to correct injustices in the lodging industry. There will be consequences.

In that same letter, Mr. Strojnik then demanded to settle for $22,850.00 plus offered to "sweeten the pot" for Defendant by including an "no visit clause for an additional $5,000.00."[1] This means that he would agree never to visit Defendant's hotel again (for an additional payment, of course.) In other words, Mr. Strojnik says that even if the U.S. Supreme Court finds he does not have Article III standing and dismisses his ADA claim, he will keep filing ADA lawsuits against Defendant until they pay him what he demands. It is no wonder Mr. Strojnik (who recently disclosed to a federal court in an Order to Show Cause hearing) has collected more than $400,000 in settlements from hoteliers in the previous 12 months. This is in spite of the fact that the ADA does not allow for private damages and Mr. Strojnik is not entitled to attorneys' fees. In his recent deposition, he twice repeated his personal mantra that hotels must "suffer the consequences" from their alleged non-compliance. According to Mr. Strojnik, the "consequences" require the defendants (who are mostly small, minority owned hotel franchisees) to each pay him tens of thousands of dollars to settle their lawsuits even though his claims have no basis in law or fact.

Since his disbarment, Mr. Strojnik has mailed hundreds of "courtesy letters" to hoteliers across the western U.S. informing them that he would file an ADA lawsuit against their hotel unless they reached a "confidential resolution" with Mr. Strojnik. These settlements are typically in the $8,000 - $15,000 range. If no settlement is reached, he files his ADA lawsuit and typically demands more than $150,000.00 in damages. As more fully

---

[1] This settlement correspondence is attached hereto as **Exhibit M**.

2

discussed below, Mr. Strojnik's claims are completely baseless.[2]

The vast majority of his *pro se* cases were filed in California federal courts until, this summer—after more than a dozen California federal courts dismissed his ADA claims for lack of Article III standing—he was declared a vexatious litigant by the Central and Northern Districts of California**.** He has since moved his serial filing operation to Arizona. Over the past few months Mr. Strojnik has filed more than 40 ADA accessibility cases in state courts throughout Arizona. He testified under oath that he files the cases in state court to avoid Article III standing requirements and because filing fees are $100 less than federal court. He has also filed *pro se* ADA lawsuits in Hawaii, Idaho, Colorado, New Mexico, and Texas.

Mr. Strojnik's lawsuits are typically broken into two sections: (1) his federal ADA claim, and (2) a smorgasbord of state law tort claims that arise from his alleged ADA claim. Because he is a *pro se* litigant, and because ADA claims only provide a prevailing party with its reasonable attorneys' fees and costs, Mr. Strojnik's ADA claim (by itself) has no monetary value to him. Thus, in order to artificially increase the settlement value of his lawsuits he asserts a handful of baseless tort claims. His negligence claim often triggers the defendants' commercial general insurance policy which allows him (a former personal injury and ADA litigation attorney) to negotiate quick settlements with insurance carriers who begrudgingly settle his claims for "cost-of-defense" or "nuisance" values. Senior U.S. District Court Judge Judge Neil V. Wake appropriately described Mr. Strojnik's litigation tactics (when he was a licensed attorney) as "extortionate." *Advocates for Individuals with Disabilities, LLC v. MidFirst Bank*, No. CV-16-01969-PHX-NVW, 2018 WL 3545291 (D. Ariz. July 14, 2018) (Describing Mr. Strojnik's litigation tactics as "extortionate" thirteen times). Two years later and no longer constrained by the rules of professional conduct, Mr. Strojnik's litigation tactics are the same, except now his claims are more frivolous and his

---

[2] Defendant incorporates by reference Defendant's Statement of Facts and legal arguments raised in its Motion for Summary Judgment [Dkt. 47].

demands are more outrageous. That is why Defendant, a small, minority-owned hotel franchisee, is moving the Court to designate Mr. Strojnik a vexatious litigant in every federal court in the U.S.

## I.    <u>MR. STROJNIK IS A VEXATIOUS LITIGANT</u>

Since his disbarment he has filed more than 200 ADA lawsuits as a *pro se* litigant, using the very same legal claims and litigation strategy that provoked the State Bar of Arizona to seek his disbarment. At the very least this Court should declare Strojnik a vexatious litigant in Arizona federal court. And because Mr. Strojnik has shown that his litigation scheme is not constrained by geographic boundaries—since his disbarment he has filed ADA lawsuits pro se in Hawaii, California, Arizona, New Mexico, Colorado, and Texas—this Court has ample justification to declare Mr. Strojnik as vexatious litigant in every federal court in the U.S.[3]

"Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." <u>De Long v. Hennessey</u>, 912 F.2d 1144, 1148 (9th Cir. 1990). Federal courts have the inherent power to regulate the activities of abusive litigants. <u>Id</u>. at 1147. The All Writs Act, 28 U.S.C. § 1651(a), provides district courts with the inherent power to enter pre-filing orders against vexatious litigants. <u>Molski v. Evergreen Dynasty Corp.</u>, 500 F.3d 1047, 1057 (9th Cir. 2007). Before entering a pre-filing order against a litigant, however, a court must evaluate the following four factors: (1) whether the litigant has been given an opportunity and notice to be heard; (2) whether the court created an adequate record for review; (3) whether there is substantive evidence as to the frivolous and harassing nature of the litigant's actions; and (4) whether the pre-

---

[3] Mr. Strojnik has shown no ability (or desire) to file good-faith ADA lawsuits in any U.S. jurisdiction. Anything but a nationwide vexatious litigant status would result in a proverbial game of "whack-a-mole"—where he pops up in other states, files and settles dozens of cases until he is finally declared a vexatious litigant in that jurisdiction. Rinse and repeat.

4

1    filing restrictive order is narrowly tailored to closely fit the specific vice encountered. *Id*.

2    The first two requirements are procedural considerations; the latter two requirements are

3    substantive considerations. *Id*. at 1057-58.

4            As more fully forth below, Strojnik should be declared a vexatious litigant because

5    he continues to file meritless lawsuits under the ADA even though federal courts have

6    consistently ruled that he lacks standing to do so. Strojnik couples his baseless ADA

7    claims with outrageous tort claims that include allegations of outlandish, six-figure

8    damages. Mr. Strojnik demands six-figure damages despite conceding in his recent

9    deposition that his damages are (at best) "nominal." His Complaints are not designed to

10   litigate valid claims; they are meant to intimidate small hotel owners and/or their insurance

11   carriers into paying out quick settlements. The United States District Courts for the North

12   and Central Districts of California have entered pre-filing orders against Strojnik based on

13   the same activities that are the subject of this Motion. The Attorney General of New

14   Mexico has also intervened in Mr. Strojnik's New Mexico cases to combat Strojnik's

15   harassing activities. This Court should follow the example of the California district courts

16   and exercise its inherent powers to regulate the activities of abusive litigants by declaring

17   Mr. Strojnik a vexatious litigant and prohibit him from filing actions under Title III of the

18   ADA, as well as any ADA-based tort claims, in any United States District Court. It is time

19   to put a stop to Mr. Strojnik once and for all.

20           **A.    Notice and Opportunity to be heard**

21           Mr. Strojnik must be given an opportunity to oppose the Court's order declaring

22   him a vexatious litigant before it is entered. *Molski*, 500 F.3d at 1058. No oral argument

23   or evidentiary hearing is necessary; briefing is sufficient. *See Strojnik v. IA Lodging Napa*

24   *First LLC*, 19-CV-03983-DMR, 2020 WL 2838814, at *7 (N.D. Cal. June 1, 2020); *see*

25   *also Pac. Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir.

26   2000). Because Strojnik will have an opportunity to respond to this Motion, this

27   procedural requirement will be met.

28                                        5

1

**B.    There is an adequate record for review**

2       Next, the Court must create an adequate record for review, which should include a

3 listing of all the cases and motions that support a finding that Mr. Strojnik is a vexatious

4 litigant. *De Long v. Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990). The record must

5 show that the litigant's activities were numerous or abusive. *Id*. In Mr. Strojnik's

6 circumstances, they are both. A district court is entitled to consider Mr. Strojnik's pattern

7 of state court litigation as well. *See Ringgold-Lockhart v. County of Los Angeles*, 761 F.3d

8 1057, 1065–66 (9th Cir. 2014).

9       Since the beginning of 2020, Strojnik has filed at least 44 ADA cases in Arizona

10 Superior Courts (21 in Maricopa County, 1 in Pima County, 6 in Gila County, 5 in Navajo

11 County, 3 in Yavapai County, 4 in Coconino County, and 2 in Mohave County). A

12 spreadsheet showing Strojnik's filings in Superior Court is attached hereto as **Exhibit A**.

13 So far, seven of those filings have been removed to this Court. Copies of the removed

14 Complaints are attached hereto as **Exhibit B**. In two of those actions, the defendants have

15 moved to have Mr. Strojnik declared a vexatious litigant. Copies of the vexatious litigant

16 motions are attached hereto as **Exhibit C**.

17       Mr. Strojnik's abuse of the legal system is not limited to Arizona. He has already

18 been declared a vexatious litigant in the United States District Court, Northern and Central

19 Districts of California. Copies of those decisions are attached hereto as **Exhibit D**, and

20 indicate that, since his disbarment, Strojnik filed more than 110 ADA cases in California

21 District Courts. In 2020, Strojnik filed six ADA lawsuits in the District of Colorado. The

22 Complaints are attached hereto as **Exhibit E**. Shortly after his disbarment, Mr. Strojnik

23 alleges he took a vacation to Hawaii and sued five hotels in the District of Hawaii while

24 he was there. Complaints from those actions are attached hereto as **Exhibit F**. In 2019,

25 Strojnik filed seven actions in the Southern and Northern Districts in Texas. Complaints

26 from those actions are attached hereto as **Exhibit G**. Between June 29, 2020 and August

27 12, 2020, Strojnik filed eight cases in the Second Judicial District Court of New Mexico,

28

four of which have been removed to federal court. The four removed complaints (as well as a Complaint from 2019), are attached hereto as **Exhibit H**. The Attorney General of New Mexico has moved to intervene in the actions, stating that it is "necessary to protect the New Mexico state and federal courts and the public from Strojnik's abusive and frivolous lawsuits." A copy of the motion to intervene is attached hereto as **Exhibit I**. Mr. Strojnik has undoubtedly filed additional cases in state courts of which Defendant is currently not aware. Of the federal cases identified (both in Arizona and elsewhere), Defendant has not found a single contested case in which Mr. Strojnik prevailed on the merits. Nor does it appear that Mr. Strojnik has ever come close to trying an ADA case to verdict. Although the majority of the cases appear to settle (because his scheme is inherently extortionate), when a defendant defends the action, they consistently prevail. Attached are more than a dozen federal court rulings granting dispositive motions against Mr. Strojnik, all of which found that Mr. Strojnik lacked Article III standing to assert claims under the ADA. See **Exhibit J**. Even when given multiple opportunities to amend his Complaint, Mr. Strojnik is unable to do so in a way that can satisfy Article III's standing requirements.

The filings identified herein only comprise Complaints that Mr. Strojnik has filed *pro se*—it does not include the 2000+ ADA cases he filed as an attorney from 2015 – 2018, the vast majority of which were dismissed by Arizona state and federal courts for lack of standing. The State Bar of Arizona suspended his law license on July 18, 2018, and then he consented to disbarment on May 10, 2019 for filing the same lawsuits he is now filing as a *pro se* litigant. A copy of the Complaint and Judgment of Disbarment is attached hereto as **Exhibit K**.

Other relevant documents include: (1) excerpts from Strojnik's deposition testimony dated September 18, 2020 that was taken by undersigned counsel in this case (attached hereto as **Exhibit L**); (2) settlement correspondence from Strojnik (attached hereto as **Exhibit M**); and (3) an Independent Medical Evaluation of Mr. Strojnik which

1    concluded that he has no discernable mobility disability (attached as **Exhibit N**).

2        The record before the Court is sufficient to determine that Mr. Strojnik is a

3    vexatious litigant. He does not view the ADA as a civil rights law. He uses is as a weapon

4    to extract quick settlements from hoteliers, the vast majority of which are owned and

5    operated by minority and immigrant families.

6        **C.    Mr. Strojnik's claims are frivolous and harassing in nature.**

7        The third factor in determining whether Mr. Strojnik is a vexatious litigant requires

8    the Court to make substantive findings as to the *frivolous* and/or *harassing nature* of his

9    legal actions. *De Long*, 912 F.2d at 1148. (Emphasis added). Prolific, repetitive filings can

10    constitute harassment because such claims result in a huge waste of judicial effort and

11    time. *Id.*; *Stone v. Baum*, 409 F. Supp. 2d 1164, 1172 (D. Ariz. 2005).

12        Both the number and content of his filings is indicia of the frivolousness of Mr.

13    Strojnik's claims. *Molski*, 500 F.3d at 1059. Furthermore, frivolous litigation is not limited

14    to only cases that have no merit. *Id.* at 1060 (holding that a district court did not err when it

15    inferred an intent to harass defendants into settlement from the fact that plaintiff had only tried

16    one of roughly 400 ADA cases and targeted ethnic restaurants viewed as easy prey for

17    coercive claims). A person can also can transform a legitimate claim into a baseless claim by

18    asserting facts that are grossly exaggerated or totally false (including overstating damages to

19    coerce a settlement). *See Id.* at 1060-61. Thus, overly litigious plaintiffs undercut the goals

20    of the ADA by filing a "large number of nearly-identical complaints contain[ing] factual

21    allegations that are contrived, exaggerated, and defy common sense." *Id.* at 1061-62. False

22    or grossly exaggerated claims of injury, especially when made with the intent to coerce

23    settlement, are at odds with our system of justice. *Id.* "A litigant who mills out generic

24    complaints that do not meet pleading standards, knowing that either the case will settle

25    without reaching the merits or that the court will grant leave to amend, is abusing the judicial

26    process." *Strojnik v. IA Lodging*, No. 19-cv-03983-DMR; 2020 WL 2838814 at *12 (N.D.

27    Cal. June 1, 2020). Such a strategy wastes the resources of the court, which must repeatedly

28                                8

rule on the same pleading issues.  It also imposes unjustified costs on parties who are forced to defend loosely pleaded complaints that do not allege specific facts about their misconduct. Most concerning, the mere fact of filing a lawsuit (regardless of its pleading sufficiency) may pressure defendants into settling what might be meritless claims rather than incur the considerable time and resources required to retain counsel and mount a defense." *Strojnik v. IA Lodging*, at * 12. Mr. Strojnik has continuously demonstrated a pattern of failing to address fundamental flaws in his pleadings despite multiple federal courts giving him the opportunity to do so. *Id.*

> **(i)**    **Mr. Strojnik does not have Article III standing to bring an ADA claim.**

Mr. Strojnik has no Article III standing to pursue an ADA claim. This is because prevailing on an ADA claim requires more than an individual with disabilities simply identifying a condition at a public accommodation that falls short of the ADA's standards. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547-48 (2016) ("Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.") To have standing, Mr. Strojnik, who an Independent Medical Examiner found was not mobility disabled in any discernable way, must meet Article III standing requirements. That is, he must demonstrate that he suffered an injury-in-fact, which is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S.Ct. at 1547. An ADA plaintiff has suffered an injury-in-fact when he encounters "a barrier that deprives him of full and equal enjoyment of the facility *due to his particular disability*." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 944 (9th Cir. 2011) (en banc) (emphasis added).

The Ninth Circuit's analysis in *O'Campo v. Bed Bath & Beyond of Cal., LLC*, 610 Fed.Appx. 706, 708 (9th Cir. 2015) is particularly instructive. In *O'Campo*, the plaintiff

9

brought an ADA claim alleging that the various ADA violations interfered with his full and equal enjoyment of the facility. The district court dismissed his complaint because the plaintiff alleged that he navigated the property with the use of a cane, and not in a wheelchair. The district court found, and the Ninth Circuit upheld, that "the barriers [plaintiff] alleged would not interfere with the full and equal access of a mobility-impaired person who requires the use of a cane, rather than a wheelchair." *Id*. at 708. Citing its earlier ruling in <u>*Chapman*</u>, the Ninth Circuit reaffirmed that an ADA plaintiff has suffered an injury-in-fact when he encounters "a barrier that deprives him of full and equal enjoyment of the facility *due to his particular disability*." <u>*Id*</u>.

Here, Mr. Strojnik identifies purported ADA violations, but cannot allege how these purported violations caused him to suffer an injury-in-fact, nor does he present any facts demonstrating how the alleged ADA violations affected his purported disability. Remember, Mr. Strojnik admitted in his deposition that he did not navigate the property in a wheelchair, does not remember if he used any sort of ambulatory device, and acknowledged that he does not use a cane, crutch, or wheelchair to ambulate around his home. (**Exhibit L**, p. 28:5-11; p. 42:4-5, p. 28:20-22).

Perhaps each of the 19 purported ADA violations Mr. Strojnik identifies could be barriers to accessibility for an individual navigating the Defendant's property in a wheelchair. Mr. Strojnik, however, did not use a wheelchair on January 8, 2020 and does not use a wheelchair at home. Dr. Greenfield's IME (and Mr. Strojnik's deposition admissions) both reveal that Plaintiff has no need to use a wheelchair. According to orthopedist Dr. Greenfield, Plaintiff "appears to be functioning well post right total knee arthroplasty"; he "ambulates relatively well with a very slight limp"; has "no evidence of positive nerve root tension signs"; has "functional range of motion of his shoulders"; and an "adequate grip on both the right- and the left-hand side." (**Exhibit O**). Accordingly, Mr. Strojnik has not (because he cannot) provide evidence showing that the purported ADA violations he identifies in his First Amended Complaint deprived him of "full and

equal enjoyment of the facility *due to his particular disability*." For this reason alone, the Court should find that Mr. Strojnik lacks Article III standing as a matter of law.

Mr. Strojnik is also unable to meet his burden of proof to receive injunctive relief, which requires more than bald, conclusory statements to the effect of "I intend to return," "I'm deterred from returning" or "I'll probably come back at some point in the future." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564, 112 S.Ct. 2130, 2134 (1992) (A plaintiff's "some-day intentions without any description of concrete plans, or indeed even any specification of *when* the some-day will be do not support a finding of the 'actual or imminent' injury that our cases require."). Because the ADA only provides for injunctive relief (*i.e.*, no monetary damages), a one-time encounter with a noncompliant facility does not an ADA claim make.

As the *Chapman* court also noted, to establish standing for the injunctive relief allowed by an ADA claim, a plaintiff must show a "real and immediate threat of repeated injury in the future." *Id.,* at 948.  See also, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, (1983) ("[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ...").  Under existing Ninth Circuit precedent, an ADA plaintiff may show the likelihood of "real and immediate threat of repeated injury in the future" in one of two ways: proving that he intends to return; or proving that the previous encounter with the ADA barrier is deterring him from returning to the property. See, *Chapman, supra* at 949:

> Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there.

Without dispute, Mr. Strojnik bears the burden of proving either that he intends to return to the Defendant's hotel (and that without injunctive relief he will encounter the ADA barrier) or that he is deterred from visiting the Defendant's hotel because of the ADA

7364065v1(69171.1)

1  barrier. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883-889, (1990):

2      In his deposition, when given the opportunity to testify exactly when and why he

3  would return to Defendant's hotel, he failed to provide any concrete reason that could

4  constitute a "real and immediate threat of repeated harm." For example, he testified that

5  he was not planning to stay at Defendant's hotel the day he inspected it, he just wanted to

6  stay there "sometime in the future." He did not have a specific date in mind, only that

7  perhaps he would "like to get away, yeah, maybe on a weekend." (**Exhibit L**, p. 59:16-

8  21; 64:4-8). He also has no pattern or history of staying at Defendant's hotel. He has only

9  stayed there once, 25 years ago, when chaperoning his son's soccer team. (**Exhibit L**, p.

10  58:7-25). Plaintiff's "some day" intentions do not come close to meeting the rigorous "real

11  and immediate threat of repeated harm" standard to receive injunctive relief. Accordingly,

12  Mr. Strojnik has no Article III standing to assert a claim for injunctive relief.

13          **(ii)**    **Strojnik's state tort claims are baseless and solely designed to**

14                         **artificially inflate the settlement value of his cases.**

15      Mr. Strojnik knows that his ADA claims have no monetary value because (even if he

16  prevails on them) he will be reimbursed for his costs but cannot claim any attorneys' fees.

17  Thus, in order to manufacture a higher settlement (*i.e.,* cost of defense) value, he has

18  bootstrapped a number of state tort claims such as negligence, negligence per se, common law

19  fraud and consumer fraud All of these claims arise from the alleged ADA violations.

20                    **(a)**    Strojnik's Negligence claim is baseless.

21      In Arizona, a possessor of land "is under an affirmative duty to use reasonable care to

22  make the premises safe for use by invitees." *McMurtry v. Weatherford Hotel, Inc.,* 231 Ariz.

23  244, 252, 293 P.3d 520, 528 (App. 2013). To establish a premises liability claim (which is

24  what Mr. Strojnik is apparently trying to do) he must prove: (1) an unreasonably dangerous

25  condition existed at the time of the accident; (2) the owner of the premise knew or should have

26  known that the condition existed; (3) the condition was not discoverable by the plaintiff; and

27  (4) the owner failed to exercise reasonable care in either providing a remedy or warning of the

28                          12

condition. _D'Ambrosio v. City of Phoenix_, 2014 WL 5310596 at *2 (Ariz. Ct. App. Oct. 16, 2014). A condition is not unreasonably dangerous if it is open and obvious or, in other words, "if people who are likely to encounter a condition may be expected to take perfectly good care of themselves without farther precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight." _Cummings v. Prater_, 95 Ariz. 20, 27, 386 P.2d 27, 31 (1963).

Mr. Strojnik's negligence claim is baseless for any of the following three reasons. First, Mr. Strojnik is unable to offer any evidence, expert report, or testimony that explains how any of the 19 alleged ADA violations on the Defendant's property are "unreasonably dangerous." On the contrary, the evidence, including Mr. Strojnik's own sworn testimony, precludes a premises liability claim. In his deposition, he testified that he has personally conducted (or reviewed) more than 2,000 ADA inspections of public accommodations and can visually identify ADA violations "fairly easily." (**Exhibit L**, p. 66:3 – 67:5). In fact, he openly boasts at how skilled he is at discovering ADA violations. On the day of his site inspection of Defendant's property, he alleges that he easily saw the purported ADA violations, and then he approached the ADA violations and measured them to confirm. (**Exhibit L**, p. 67:8 – 72:20, 79:14 – 80:21; 83:7 – 84:3). In other words, Mr. Strojnik admits the allegedly dangerous conditions were "open and obvious" and "discoverable" to him. If he was concerned that encountering the ADA violations would cause him physical pain, he should not have intentionally approached the violations to measure them.

Second, emotional harm (by itself) is not a sufficient basis to claim negligence damages. Mr. Strojnik testified under oath that he has not received any professional treatment related to the anger and feelings of segregation that he allegedly experienced when he saw the purported ADA violations at Defendant's property. (**Exhibit L**, p. 78:4 – 16; 94:20 – 95:15, 78:17 – 24). Nor have they manifested in any physical way. _Keck v. Jackson_, 122 Ariz. 114, 115

13

1    (1979) ("mental anguish must manifest physically to be recoverable.").

2          Third, Mr. Strojnik has not (and cannot) offer any evidence to prove that encountering

3    the alleged ADA violations caused him to experience physical pain in his right leg. Causation

4    has two subparts: (1) actual or factual causation, and (2) proximate or legal causation. _Dupray_

5    _v. JAI Dining Services (Phoenix) Inc.,_ 245 Ariz. 578, 583, ¶ 17 (App. 2018). Actual causation

6    "exists if the defendant's act helped cause the final result and if that result would not have

7    happened without the defendant's act." _Oniveros v. Borak_, 136 Ariz. 500, 505 (1983).

8    Proximate causation exists when the defendant's acts are a "substantial factor" in the injury.

9    _Barrett v. Harris_, 207 Ariz. 374, ¶ 26 (App. 2004). "Sheer speculation is insufficient to

10   establish the necessary element of proximate cause or to defeat summary judgment." _Badia_

11   _v. City of Casa Grande,_ 195 Ariz. 349, 357, ¶ 29 (App. 1999). Mr. Strojnik's conclusion that

12   the pain he felt in his right leg on the Defendant's property was caused by encountering the

13   alleged ADA violations is the definition of "sheer speculation." He offers no expert report to

14   establish causation. In his deposition he mentions something about the "parallelogram of

15   forces" but was unable to describe what that concept means or whether he would have not

16   experienced pain getting out of his car in a properly sloped parking space. (**Exhibit L**, p. 27:10

17   – 28). He also testified that he experienced "constant pain" in his right leg both before and

18   after his visit to Defendant's property. (**Exhibit L**, p. 21:10 – 25). In short, no admissible

19   evidence supports his causation claim. His negligence claim must be dismissed as a matter of

20   law.

21                    (b)    Mr. Strojnik's Negligence _per se_ claim is baseless.

22          Mr. Strojnik's negligence _per se_ claim suffers the same fatal flaws as his

23   negligence claim. See above analysis. In addition, the ADA is not a safety statute, and

24   therefore cannot serve as a basis for a negligence _per se_ claim. _Orlando v. Northcutt_, 103

25   Ariz. 298, 300, 441 P.2d 58, 60 (1968) ("It is the prevailing rule, recognized in Arizona,

26   that a breach of a statute intended as a safety regulation is not merely evidence of

27   negligence, but negligence _per se_.")

28                                           14

1    Numerous federal courts, including the Ninth Circuit, have held that the ADA is

2  not a safety statute and cannot be the basis for a negligence *per se* claim. <u>*Chandler v.*</u>

3  <u>*Arizona Partners Retail Inv. Group, LLC*</u>, 329 Fed.Appx. 724 (9th Cir. 2009) (Ninth

4  Circuit upheld dismissal of negligence *per se* claim because the ADA was not designed to

5  protect plaintiffs from physical harm.); <u>*West v. Hanging Tree Saloon, Inc.*</u>, No. SA-11-

6  CA-198-FB, 2011 WL 13324127 (W.D. Texas, July 29, 2011) ("the ADA is not a proper

7  basis for a negligence per se claim."); <u>*Samuels v. Safeway, Inc.*</u>, 391 F.Supp.3d 1, 3

8  ("Nowhere does the ADA mention the creation or promotion of safety measures. Instead,

9  as 42 U.S.C. § 12101(b) makes clear, the ADA's relentless focus is on the elimination of

10  discrimination."). In addition, the same causation analysis discussed above applies to Mr.

11  Strojnik's negligence *per* se claim. Accordingly, his negligence *per se* claim must be

12  dismissed as a matter of law.

13                     (c)    <u>Mr. Strojnik's fraud claims have no merit</u>.

14    To establish a common law fraud claim in Arizona, a plaintiff must prove with

15  clear and convincing evidence: (1) a representation; (2) its falsity; (3) its materiality; (4)

16  the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should

17  be acted upon by and in the manner reasonably contemplated; (6) the hearer's ignorance

18  of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his

19  consequent and proximate injury. <u>*Peery v. Hansen*</u>, 120 Ariz. 266, 269, 585 P.2d 574, 577

20  (Ct. App. 1978). All nine elements must be met in order to establish an actionable claim

21  of fraud. <u>*Id*</u>. "In Arizona, common law fraud must be proved by clear and convincing

22  evidence." <u>*Dunlap v. Jimmy GMC of Tucson, Inc.*</u>, 136 Ariz. 338, 343, 666 P.2d 83, 88

23  (Ct. App. 1983). There is no evidence in the record to prove all of the nine elements of

24  fraud by clear and convincing evidence.

25    First, information regarding wheelchair accessibility found on Defendant's website

26  is immaterial because Mr. Strojnik did not use a wheelchair to visit Defendants' property

27  nor does he use a wheelchair in his daily life.  In fact, Mr. Strojnik testified that he has

28                                    15

never visited a hotel in a wheelchair or used a wheelchair at home. Therefore, any information on Defendant's website regarding wheelchair accessibility would not be material to Mr. Strojnik.

Second, Mr. Strojnik's purported reliance on Defendant's website (which identified various wheelchair accessible features of the property) was not reasonable. He testified that he has only encountered one ADA compliant hotel in the past six years—and that was some time in 2016 or 2017. (**Exhibit L**, p. 51:9 – 21). In other words, he alleges that he reasonably believed the Defendant's hotel was ADA compliant even though (despite inspecting hundreds of hotels) he has only encountered one ADA compliant hotel in more than five years of inspecting hotels for ADA compliance. Accordingly, he did not *reasonably* rely on Defendant's website.

Third, Mr. Strojnik suffered no proximate or consequent injury as a result of visiting Defendant's hotel. He has no pecuniary loss—he did not reserve a room, pay for parking, or otherwise incur any actual out-of-pocket costs or expenses that are calculable. His emotional suffering (i.e., anger and feelings of segregation) and alleged physical discomfort cannot be the basis for a damages claim in a fraud cause of action. *Med. Lab. Mgmt. Consultants v. Am. Broad. Companies, Inc.,* 30 F.Supp.2d 1182, 1200 (D. Ariz. 1998) (Only pecuniary damages are allowed for fraud under Arizona law). Accordingly, Mr. Strojnik's common law fraud claim should be dismissed as a matter of law.

(d)     Mr. Strojnik's consumer fraud claim is also baseless.

To establish a statutory consumer fraud claim in Arizona, a plaintiff must prove: (1) defendant used deception, a deceptive act or practice, fraud, false pretense, made a false promise, made a misrepresentation, or concealed, suppressed, or omitted a material fact in connection with the sale or advertisement of merchandise; (2) defendant intended that others rely upon such a deception or fraud; and (3) plaintiff suffered damages as a result of reliance on defendant's deception or fraud.

A private individual's relief under the Consumer Protection Act is his actual

16

damages suffered as a result of the unlawful act or practice. *Holeman v. Neils*, 803 F.Supp. 237, 242 (D. Ariz. 1992). These damages include the consideration paid in the contract and out-of-pocket expenses. *Id.* See also *Parks v. Macro-Dynamics, Inc.,* 121 Ariz. 517, 521, 591 P.2d 1005, 1009 (App. 1979) (finding the plaintiff had a claim for relief for statutory fraud where plaintiff alleged out-of-pocket expenses caused by the statutorily prohibited conduct); *Cheatham v. ADT Corporation*, 161 F.Supp.3d 815, 831 (D. Ariz. 2016) (plaintiff sufficiently alleged damages under consumer fraud claim when she claimed she would not have purchased defendant's product but for violation of Act).

Mr. Strojnik argues that he visited Defendant's hotel because he relied on Defendant's website stating that the hotel was ADA compliant.[4] Even assuming that is true (which it is not), he only alleges that he suffered physical and emotional harm as a result of his reliance—he does not allege that he suffered any calculable pecuniary loss.

### D.    The Court should enter a pre-filing order declaring Mr. Strojnik a vexatious litigant.

A pre-filing order must be narrowly tailored to prevent infringement on the litigator's right to access the courts. *De Long*, 912 F.2d at 1148.  Thus, a court must enter a pre-filing order after a cautious review of the pertinent circumstances. *Molski*, 500 F.3d at 1057. Clearly, an order that prevents a litigant from filing ADA causes of action in a specific jurisdiction is appropriate. *Id.* at 1061; *see also* Strojnik Decisions. However, it is abundantly clear that an order merely prohibiting ADA filings in the District of Arizona is insufficient for two reasons.

First, when California courts began declaring Mr. Strojnik a vexatious litigant, he simply moved to a new state.  He has cases pending in federal courts in Arizona, Colorado, Hawaii, New Mexico, and Texas. And Mr. Strojnik will continue filing cases. He cannot be reasoned with, he does not feel pity or remorse or fear, and he is no longer bound by

---

[4] This claim fails for the same reasons identified in the section addressing the common law fraud claim and those arguments are incorporated herein.

the professional standards that govern attorneys (if those ever mattered to him). In his words, he is "going to try [his] damndest to be the one" that makes hotels suffer the consequences of their ADA non-compliance. This is his mantra, regardless of the fact that he does not have Article III standing to bring these claims. Even after Mr. Strojnik was declared a vexatious litigant in California, he was able to file dozens of ADA cases in Arizona—and thus pocket tens (and maybe hundreds) of thousands in settlements before another vexatious litigant motion was filed. If he continues to multiply this tactic in other states, which he certainly will, Mr. Strojnik will pocket millions in settlements before he runs out of states in which he can no longer file lawsuits in. Because of this, this Court should enter a pre-filing order that bars Strojnik from filing in <u>any</u> U.S. District Court without Court approval. *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 22 (2d Cir. 1986) (enjoining plaintiff from "asserting in **any** federal court any new claims related to, or arising out of" his previous filings) (emphasis added).

Second, Strojnik is using the ADA to assert additional state law claims which allows him to inflate his baseless damages claims and significantly drive up the cost of defense. Because he often targets smaller hotels, many often agree to a quick payout to avoid protracted litigation, unaware that they are dealing with a serial offender. Because of this, this Court should enter a pre-filing order that bars Strojnik from filing any claim arising from an alleged ADA violation, including state and federal claims for negligence, fraud (whether common law, consumer, or securities), or any other tort claim without Court approval.

Accordingly, Defendant respectfully requests that this Court enter a pre-filing order that bars Strojnik from asserting any claim arising from an alleged ADA violation (including tort claims) in any federal district court within the United States.

. . .

. . .

. . .

. . .

18

RESPECTFULLY SUBMITTED this 30th day of October, 2020.

JENNINGS, STROUSS & SALMON, P.L.C.

By  *s/ Lindsay G. Leavitt*
Lindsay G. Leavitt
One East Washington Street, Suite 1900
Phoenix, Arizona  85004-2554
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

☒  I hereby certify that on October 30, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Peter Srojnik
7847 N. Central Avenue
Phoenix, AZ 85020
ps@strojnik.com

☐  I hereby certify that on October 30, 2020, I served the attached document by mail on the following, who are not registered participants of the CM/ECF System:

s/  Tana Davis-Digeno

19

7364065v1(69171.1)